## Penna. & N. Y. Canal & R. R. Co. *versus* Mason.
## Same *versus* Leslie.

1. A master is bound to furnish his servants with such machinery as is reasonably safe and suitable for the work. If he employ other servants to construct or repair such machinery, he is responsible to his servants who use the machinery for any negligence in the work of construction or repairing.

2. In an action against a railroad company to recover damages for the death of an engineer and fireman upon its road caused by the explosion of the boiler of a locomotive which had recently come from the repair shops of the company and had been insufficiently repaired, the company is not exempt from liability on the allegation that the workmen in the repair shop who did the work were fellow-servants of the deceased, although it appear that they were under the same general superintendent.

3. In such action, it was not error to charge the jury that the master was bound to keep and maintain the machinery in such condition as to be reasonably and *adequately* safe for the deceased to be upon and use.

March 16th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

WRITS of error to the Court of Common Pleas of *Bradford county :* Of July Term 1884, Nos. 41 and 122.

These were two actions of trespass on the case, brought by Anna Mason and Sarah Leslie against the Pennsylvania & New York Canal and Railroad Company to recover damages for the deaths of their respective husbands, Frank Mason and John Leslie, caused by the alleged negligence of the defendant company. The defendant pleaded not guilty.

On the respective trials in the court below, before MORROW, P. J., the facts appeared to be substantially the same in both cases and were as follows :

John Leslie and Frank Mason were employees of the defendant company, the former as engineer, and the latter as fireman, of the locomotive "Wyoming." On April 26th, 1880, they were both killed by the sudden explosion of the boiler of this locomotive, while they were operating it in the course of the company's business. The locomotive was originally built by the Baldwin Locomotive works in 1860, and had been in the use of the defendant since that time. In 1877 it had been taken to the defendant's repair shops at Sayre and inspected, repaired and tested. Shortly before the accident it had again been taken to these shops and repaired and re-tested by the practical machinists who were in the employ of the company.

These employees were under the direction of J. N. Weaver, the master machinist of the company. Weaver testified that he also had the engineers and firemen employed by the company "under my control; that is so far as the care of the engines was concerned. I had nothing to do with them on the road. I directed what engines they were to run on." He further testified that he directed what engines should go out and assigned the engineers to run them, that he had exclusive charge of such assignments; that he arranged all promotions and made such changes as he thought necessary. The evidence as to the cause of the accident was conflicting. There was some testimony tending to show that the accident was due to the negligence of Leslie; other witnesses testified that the boiler was defective in its original construction and insufficiently repaired, and that by reason of these defects it was unfit for use. The court submitted these questions to the jury for their determination.

The plaintiff submitted the following point: 1. That the defendant company was bound to keep and maintain the engine "Wyoming" in such condition as to be reasonably and adequately safe for Mason, [Leslie] the deceased, to be upon and use, and if the jury believe the death of Mason [Leslie] was caused by the negligence of the defendant in failing to keep and maintain the said engine in such reasonably and adequately safe condition, the plaintiffs are entitled to recover.

Answer: This is affirmed.

The defendant submitted the following point in the case brought by Anna Mason:

3. That the workmen in the shop at Sayre who repaired this boiler were fellow-servants under the evidence in this case with Frank Mason, and the plaintiff cannot recover if the explosion was caused by their negligence, either in inspecting or repairing the boiler.

Answer: That is denied. It is true that Mr. Weaver testified that he had under him Slowey, who made these repairs, and he also had under him the engineer and fireman of the gravel train; and, as Slowey repaired this engine by his direction, it is claimed on the part of the defendant that because they were all under Weaver, therefore they were fellow-servants, and that if the engine was not reasonably, carefully and well repaired, the plaintiff cannot recover, because Slowey and Mason were fellow-servants. I do not think it follows, necessarily, because Weaver swears that he is the master mechanic of the shop, and I think that whatever was done under him would bind the defendant.

Verdict in each case for the plaintiff therein, and judgment

thereon. The defendant took these writs of error, assigning for error, *inter alia*, the action of the court in affirming plaintiffs' point, and in qualifying defendants' point. The cases were argued together in the Supreme Court.

*Lewis M. Hall*, (with him *Henry Streeter* and *William T. Davies*), for the plaintiff in error.—The language of the plaintiffs' first point laid down too strict a standard of care to be taken by the company, and should not have been affirmed without qualification. The court should have qualified the words, "was bound to keep and maintain," by adding "was bound to use reasonable care to keep and maintain." The word "adequately" should likewise have been qualified. The obligation of defendant was ordinary, not extraordinary care: Ardesco Oil Company *v.* Gilson, 13 P. F. S., 150; Painter *v.* Mayor of Pittsburg, 10 Wr., 213; P. & R. R. R. Co. *v.* Agnew, 11 W. N. C., 394; Mansfield Coal Co. *v.* McEnery, 10 N., 185; Wonder *v.* R. R. Co., 32 Md., 418. The machinists, who repaired the locomotive, were fellow-servants of the deceased engineer and fireman, and as the plaintiff alleges that the accident was caused by the failure of the former to properly repair the locomotive, the plaintiff cannot recover. They were under the same master, J. N. Weaver, and engaged in the same work, viz., that of operating the road: Lehigh Valley Coal Co. *v.* Jones, 5 Norris, 432; Caldwell *v.* Brown, 3 P. F. S., 453; Weger *v.* R. R. Co., 5 P. F. S., 460; Holden *v.* Fitchburg R. R. Co., 129 Mass., 268; Smith *v.* Potter, 2 Amer. and Eng. R. R. Cases, 140; Gormley *v.* R. R. Co., 72 Ind. 31; Robertson *v.* R. R. Co. 78 Ind. 77; Harvey *v.* R. R. Co., 88 N. Y. 481.

*H. N. Williams, E. J. Angle, E. Overton, J. F. Sanderson, N. C. Elsbree,* and *L. Elsbree,* for the defendants in error.— A master is bound to furnish his employees with reasonably and adequately safe machinery and to keep the same in a reasonably and adequately safe state of repair. Where corporations are masters, this duty must be performed by agents and the default of such agents is the default of the corporation, and not of a fellow-servant: O'Donnell *v.* R. R. Co., 9 P. F. S., 248; Mullan *v.* Steamship Co., 28 P. F. S., 32; Baker *v.* Allegheny R. R. C., 14 Norris 215; Hough *v.* R. R. Co., 10 Otto, 218; Ford *v.* Fitchburg R. R. Co., 110 Mass., 241; Fuller *v.* Jewett, 80 N. Y., 51, and cases referred to therein in the opinion of the court: Clarke *v.* Holmes, 7 H. & N. 937.

Mr. Justice GORDON delivered the opinion of the court May 25th, 1885.

On the 26th day of April, 1880, in consequence of the explosion of a locomotive boiler belonging to the defendant below, John Leslie, the engineer, was killed outright, and Frank Mason, the fireman, was so injured that he died on the 4th of May following, and these actions were brought by their widows severally for damages resulting to them from the death of their respective husbands. As these actions are in all respects similar, they were, in this court, argued together, and for this reason we will dispose of both in the same opinion.

Certain questions which arose in the court below have been settled by the verdict; among others, the insufficiency of the boiler for the work it was intended to do, and the fact that Leslie and Mason did not by any act of commission or omission contribute to the accident. There were also certain legal principles recognized by the court below, about which there was and can be no serious dispute, as that the burthen of proof was on the plaintiffs to show negligence on part of the defendant or its agents; that there could be no recovery if the accident resulted from the negligence of a fellow-servant; that this master was bound to furnish safe appliances and tools with which its servants might accomplish the work they were required to do, and that it could not be held liable if competent and careful mechanics were employed in the manufacture and repair of the boiler. In all these particulars the court properly instructed the jury, and they would seem to cover the entire case. Nevertheless we have some assignments of error founded on exceptions taken to the rulings of that court.

We are told that it was a mistake for the learned judge to affirm the plaintiffs' first point because of its containing the word "adequately" as follows; "that the defendant company was bound to keep and maintain the engine 'Wyoming' in such a condition as to be reasonably and *adequately* safe for Mason the deceased, to be upon and use." But as, according to Webster, 'adequacy' means simply 'sufficiency; sufficiency for a particular purpose,' we cannot see where in this instruction there was error. The boiler ought to have been sufficient for the purpose intended, and if it was not the company was responsible for the absence of such sufficiency; indeed, in this alone the neglect, if any, is found. But the court below was asked by the counsel for the defendant to say that the workmen in the shop at Sayre, who repaired the boiler, were, under the evidence, fellow-servants with Leslie and Mason, and that there could be no recovery for the negligence of such co-employees. To this the court made answer as follows: "That is denied. It is true that Mr. Weaver testified that he had under him Slowey, who made these repairs, and he had also under him the engineer and fireman of the gravel train;

and as Slowey repaired this engine by his direction, it is claimed on the part of defendant that because they were all under Weaver, therefore they were fellow-servants, and that if the engine was not reasonably, carefully and well repaired, the plaintiff cannot recover, because Slowey and Mason were fellow-servants. I do not think it follows necessarily, because Weaver swears that he is the master mechanic of the shop, and I think that whatever was done under him would bind the defendant." We think this answer accords with the general tenor of our Pennsylvania decisions, and unless we propose a new departure, and conclude that the servant is to have no protection whatever from the carelessness of his master, we must support this ruling of the court below. How a boiler maker employed in a machine shop can be regarded as a co-employee with a fireman and an engineer engaged in running a locomotive on a railroad, in the sense of making the latter responsible for the negligence of the former, is something that is difficult to understand. The only possible connecting link between them was the superintendent, Weaver, but as he stood in the place of the defendant company in the department over which he was placed, he is not to be regarded as an employee but as a principal: Mullan *v.* The Steamship Company, 28 P. F. S., 25. What business had Leslie and Mason in or about the company's machine shop any more than they had about the shop of any other firm or individual? The boiler was condemned as unfit for use, and was taken from these men for the purposes of repair, and afterwards, when it was supposed to have been made safe, it was returned to them and they were required to use it as a machine fit for the intended purposes. The fact was, as the jury found, it was not safe, and not fit for the use to which it was put; it blew up, and destroyed the lives of the men who had charge of it, and the question now is, upon whom is the blame to rest if not on the master? And how are Leslie and Mason to be charged with the negligence of men with whom they had not the remotest practical connection?

Are we to strain a point against these laborers and raise a theoretical connection between them and the boiler maker in order to shift the responsibility from the master to the servant? Neither on disposition nor authority can we approve a proposition so clearly wrong as this. Says Dr. Wharton in his work on Negligence, sec. 232: "a master is bound when employing a servant to provide for the servant a safe working place and machinery. It may be that the person by whom buildings and machinery are constructed, are servants of the common master, but this does not relieve him from his obligation to make buildings and machinery adequate for working

[Seeley *v.* Garey.]

use.   Were it otherwise, the duty before us, one of the most
important of those owed by capital to labor, could be
evaded by capitalists employing their own servants in the con-
struction of buildings and machinery.   In point of fact, this is
the case with most great industrial agencies, but in no case
has this been held to relieve the master from the duty of fur-
nishing to his employees, material, machinery, and structures,
adequately safe for their work."   The learned author, in sup-
port of what he thus propounds, cites, among others, the case
of Ford *v.* Fitchburg Railroad Company, 110 Mass. 240.   A
case very much like the one in hand, and in which the duties
of the master to his servants are well and ably stated by Mr.
Justice COLT.   It is there, as in many other cases, held, that
the legal rule which exempts the master from responsibility
for accident resulting to those in his employ, or from those oc-
curring through the neglect of co-laborers, does not excuse him
from the exercise of reasonable care in supplying and main-
taining suitable implements for the performance of the work
required.   Nor are those agents who are charged with the
business of supplying the necessary machinery, to be regard-
ed as fellow-servants, but rather as charged with the duty
which the master owes to the servant, and the neglect of such
agent is to be regarded as the neglect of the master.   So is
the employer equally chargeable whether the failure is found
in the original tool, or machine or in a subsequent want of re-
pair by which it becomes dangerous.   There can, indeed, be
no essential difference in these particulars, and the only ques-
tion is, whether the defect from which the accident arose, was
known, or might, by the exercise of reasonable diligence, have
been known to the master or his agents.

What has been above stated accords, we think, with the
general tenor of our own authorities, and among others
O'Donnell *v.* The Railroad Company, 9 P. F. S., 241.   We
must, therefore, refuse to sustain the exceptions of the plain-
tiffs in error, and approve the rulings of the court below.

Judgment in each case affirmed.