## Marsh v. Lehigh Valley Railroad Company, Appellant.

*Negligence—Railroads—Master and servant—Evidence—Explosion of locomotive.*

While an employer owes his employee the duty of furnishing such machinery and appliances as, in the ordinary usage of the business engaged in, are safe and suitable and of keeping them in such condition, a verdict and judgment cannot be entered against him at the suit of an injured servant on a guess that he was negligent or on a mere theory of specific negligence without proof to sustain it. Specific negligence must be shown by competent testimony before the question of liability can go to a jury, who, in no case or controversy, are to be guessers, but, in all, sworn triers of facts, upon evidence submitted to them.

In an action to recover damages from a railroad company for the death of a locomotive fireman, it appeared that the death was caused by the explosion of the boiler of a locomotive upon which the deceased was working. After the explosion parts of the boiler were varnished to preserve them, and they were stored away by the railroad company. When the case was called for trial the defendant presented to the court an affidavit stating that the portions of the boiler preserved were in the same condition as they were in immediately after the explosion, and that to properly understand the case the jury should view the boiler. Two experts for the plaintiff who examined the parts of the boiler preserved, testified that the iron was in poor condition, thin and worn, unsafe, rotted, wasted away and corroded; that it had wasted away from its original thickness of three eighths of an inch to one eighth of an inch, and was not thicker than a knife blade. One of the experts stated that in his judgment the explosion was caused by the unsafe condition of the boiler. *Held*, that the evidence was sufficient to submit to the jury on the question of defendant's negligence.

*Negligence—Railroads—Master and servant—Fellow servant—Fireman —Boiler inspector.*

A boiler inspector of a railroad is not a fellow servant of a locomotive fireman.

Argued April 14, 1903. Appeal, No. 85, Jan. T., 1903, by defendant, from judgment of C. P. Luzerne Co., May T., 1901, No. 293, on verdict for plaintiff in case of Kate L. Marsh v. Lehigh Valley Railroad Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before LYNCH, J.

The circumstances of the accident and the condition of the boiler, the explosion of which caused the death are stated at length in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $6,750. Defendant appealed.

*Error assigned* among others was in refusing binding instructions.

*James L. Morris* and *Stanley Woodward*, of *Woodward, Darling & Woodward*, for appellant.—The direct cause of the accident, the specific negligence of the defendant that is alleged to have caused it, is not shown.

It is not permissible to guess at the cause of an injury, and to assume it is something for which the defendant was responsible : Reese v. Clark, 146 Pa. 465; Mixter v. Imperial Coal Co., 152 Pa. 395; Reese v. Hershey, 163 Pa. 253; Wojciechowski v. Spreckels's Sugar Refining Co., 177 Pa. 57; Dickerson v. Cent. R. R. of New Jersey, 189 Pa. 567; Zahniser v. Penna. Torpedo Co., 190 Pa. 350; Alexander v. Penna. Water Co., 201 Pa. 252; Higgins v. Fanning & Co., 195 Pa. 599; Price v. Lehigh Valley R. R. Co., 202 Pa. 176.

The negligence complained of was that of a fellow servant, a risk of decedent's employment: P. & R. R. R. Co. v. Hughes, 119 Pa. 301; Durst v. Carnegie Steel Co., 173 Pa. 162; Spees v. Boggs, 198 Pa. 112; McAvoy v. Penna. Woolen Co., 140 Pa. 1; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432 ; Keystone Bridge Co. v. Newberry, 96 Pa. 246; Reading Iron Works v. Devine, 109 Pa. 246; N. Y., etc., R. R. Co. v. Bell, 112 Pa. 400.

*W. H. Hines*, with him *D. C. Harrower*, for appellee.—The evidence was sufficient to submit to the jury : Fuller v. Jewett, 80 N. Y. 46; Dyer v. Pittsburg Bridge Co., 198 Pa. 182.

A boiler inspector is not a fellow servant of a fireman : Hough v. Ry. Co., 100 U. S. 213; Lawless v. Conn. River R. R. Co., 136 Mass. 1; Forsyth v. Hooper, 93 Mass. 419; Fuller v. Jewett, 80 N. Y. 46 ; Ford v. Fitchburg R. R. Co., 110 Mass. 240; Northern Pacific R. R. Co. v. Herbert, 116 U. S. 642 (6 Sup. Ct. Repr. 590); Penna. & N. Y. Canal & R. R. Co. v. Mason, 109 Pa. 296.

OPINION BY MR. JUSTICE BROWN, July 9, 1903:

The first reason urged why this judgment should be reversed is, that " the direct cause of the accident, the specific negligence of the defendant that is alleged to have caused it," was not shown on the trial below. In pressing this reason, the learned counsel for the appellant insist that the case of plaintiff, as presented, is simply one of a supposed theory as to the cause of the accident, and is not supported by established facts.

It is, of course, true that, as between employer and employee, the mere happening of an accident raises no presumption that it was due to the negligence of the employer, and no theory as to how it might have happened, not supported by facts from which the jury can fairly find that the specific act of negligence charged is sustained, will justify the submission of the question to them. While the employer owes his employee the duty of furnishing such machinery and appliances as, in the ordinary usage of the business engaged in, are safe and suitable, and of keeping them in such condition, a verdict and judgment cannot be entered against him at the suit of an injured servant on a guess that he was negligent, or on a mere theory of specific negligence, without proof to sustain it. Specific negligence must be shown by competent testimony before the question of liability can go to a jury, who, in no case or controversy, are to be, guessers, but, in all, sworn triers of facts, upon evidence submitted to them. This we have repeatedly said in cases like the present, among the latest being Higgins v. Fanning & Co., 195 Pa. 599; Spees v. Boggs, 198 Pa. 112; Alexander v. Penna. Water Co., 201 Pa. 252; Price v. Lehigh Valley R. R. Co., 202 Pa. 176; and the judgment here cannot be sustained if it is on a finding of a mere theory, unsupported by proof that the railroad company was negligent.

The specific act of negligence charged against the appellant is, that it knowingly supplied a locomotive with an old, worn, defective, unsafe and dangerous boiler, which exploded and caused the death of appellee's husband. On the day of the trial—February 19, 1903—two expert witnesses, called by the plaintiff, had examined the exploded portions. Complaint now seems to be made by the appellant of the examination

of the pieces of the boiler by these witnesses, because it was not made until nearly two years after the explosion; but the fact is overlooked that, on February 16, 1903, an order was made for a view of the exploded parts by the jury on application of the defendant, based on an affidavit of counsel that "the exploded portions of the boiler of said engine are now in the same condition in which they were when found immediately after the explosion, and that for a proper understanding of the testimony and trial of the case, the jury should view and examine the exploded portions of said boiler." In addition to this, on the trial, E. T. James, a witness called by the defendant, testified that the parts had been cut as carefully as possible and that both sheets and crown from the boiler had been varnished and put away, that they might be kept as nearly as possible in the condition in which they were found. As a result of their inspection of the pieces of the exploded boiler, these two witnesses called by the plaintiff testified that the iron was of poor condition, thin and worn, unsafe, rotted, wasted away and corroded; that it had wasted away from its original thickness of three eighths of an inch to one eighth of an inch, and was not thicker than a knife blade; and one of them stated that, in his judgment, the explosion was caused by this unsafe condition of the boiler. In the testimony of John Hart, the following is found: " Q. Tell the jury what you saw there when you made this examination. A. Well, I found the boiler in some places to be hard and crystallized metal and in other places very thin; towards the front sheet, that would be the tube sheet end, there, very thin on both sides; and from there up to about four feet, I think, one side—about four feet—very thin, runs down to a thickness of a knife blade on the edge; been corroded and wasted around the rivets through the mud ring, making it very weak there on both sides. Q. What else did you see? A. Well, I see that some of the metal seemed to very good. It stands two or three times—and don't make no fracture; while the others look to me as though it would not stand anything, unfit to have on the road. . . . Q. Did you make a very careful examination of this boiler? A. I went over it twice. I did not overlook that I know of. I looked it over carefully and done the best I could do with it. . . . Q. Looking at these photo-

graphs, and the evidence being that the explosion caused this boiler to be lifted up and thrown over a track into the river and the engineer and the firemen and brakemen lifted up and flung a distance of several cars from the engine—taking that in connection with your examination of this boiler, what, in your judgment—in your judgment, now—was the cause of that accident? A. I answered that question before. I thought the boiler was not safe; ruptured right around—and in that manner. Q. When you said the boiler was not safe, where, if anywhere, was the weakness shown in that boiler? A. Shown right from the mud ring up. Q. How were the bolts? A. The bolts looked as if they had been pulled out of some of the holes for a distance up and I could not tell anything about the rest; because they had been chipped off—could not say anything about the rupture from there up. Been chipped off— diamond pointed. Q. How were these back heads held together? A. Held together in the boiler leg with stay bolts— outer to the inner sheet. Q. Stay bolts? A. Yes, sir. Q. In speaking of this rupture where you say those stay bolts were cut off and this rupture, you say the upper portion of it being stronger than down at the lower portion where you say it was as thin as a knife blade and split all the way up? A. Yes . . . . Q. (The Court): What is the usual thickness of boiler iron in locomotive boilers of this character? A. Well, they make them from three eighths up. I notice that this metal is three-eighths inches boiler now, the crown sheet; the tube sheet is half-inch metal, that is the back head is half-inch metal. Q. (Plaintiff's counsel): How thick is it at this point where the tear commences? A. Where it starts, just about as thick as a knife blade on every edge." On cross-examination, the witness testified: " Q. You say the explosion of this boiler was caused by its being in an unsafe condition? A. Yes, sir. Q. You do not say what that unsafe condition was due to, do you? A. Sir? Q. You do not say to what that unsafe condition was due at the time of the explosion? A. Very weak and was not able to withstand the pressure necessary to do your work, I presume. Q. But you do not say why it was weak? A. I think it has been wasted away. Q. Did you examine the crown sheet for signs of low water? A. Yes, sir . . . . Q. You say the boiler was unsafe? A. In my opinion.

Q. Because it did explode? A. Yes, did explode. My opinion, I say it was unsafe, rotted, wasted away, corroded away there." Lyman H. Carle testified : " Q. Tell what you saw when you examined that boiler—its condition. A. There was only a portion of the boiler there. The front or cylinder part of the boiler was not there. The fire box and crown sheet and wagon top and mud-ring, all those were there. The rest were not there as I saw. The boiler on the top part looked to be good; the iron looked to be good and its usual thickness. On the bottom it was in very bad condition, very thin, as though it had been worn away with sediment, bad water, and so on, from usage. . . . (The Court): Describe what you saw there. A. The iron, as I saw it, in my opinion from the top—on the top of the iron is good, evidently it was, because in one place it is bent over like this and no fracture in it at all. Then as you go down from that to the mud-ring it gets worse. Down close to the mud-ring there is places where it was not, I should judge, one eighth thick, not thicker than a knife blade, that is a good sized pocket knife blade. As you went down, the thinner it was and the worse condition. While I did not sound it with a hammer, anything of that kind as to whether it was crystallized or not, there was portions I thought was crystallized and part not. The iron top was excellent good condition. The iron on the bottom very bad condition. . . . Q. Did you examine what is called the mud-ring ? A. Yes, sir. Q. What was the condition of that as you saw ? A. Poorly, bad condition. Q. Describe. A. The iron was thin, worn. Q. Thin and worn ? A. Yes, sir. . . . Q. Did you examine the stay-bolts ? A. I did. Some of them were stripped and some of them were in their place broken. Some of them were stripped, the threads stripped off, stripped through the sheet, the threads stripped off, others broken right off at the sheet. Q. When the thread is stripped off, what does that indicate ? A. Poor iron poorly put in. Q. Did you say some were broken? A. Some were broken."

The testimony of these two witnesses is not merely as to a theory of what might have caused the explosion, but is a recital of facts, which, if believed by the jury, sustain the plaintiff's allegation that the defendant was negligent in placing its

fireman on a locomotive supplied with an old, worn, defective, unsafe and dangerous boiler. Further discussion cannot make it plainer that there was testimony which the court was bound to submit to the jury in support of the specific negligence charged against the defendant; and, though the jury might very fairly have found, from the testimony offered by the defendant, that its theory of the cause of the explosion was the correct one, the question was exclusively for their determination, and their finding as to it cannot be disturbed. Whether the appellant had discharged its full duty to the deceased by furnishing reasonably safe and suitable appliances for the work to be done, and, by having the boiler regularly and carefully inspected, and having made all proper repairs thereto, was a question for the jury. If the inspections were carelessly made by the inspector, the court properly held that the latter's carelessness was not that of a coemployee of the deceased: Penna. & New York Canal & R. R. Co. v. Mason, 109 Pa. 296. Finding no error in this record, which is that of a trial involving pure questions of fact, the judgment is affirmed.