# Saunders *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Rear end collision between wagon and car—Case for jury.*

1. In an action against an electric railway company to recover damages for the death of plaintiff's husband, the case is for the jury, where it appears that the deceased at the time of the accident was driving on the eastbound track of the defendant's railway, that owing to a car ahead he had stopped his team at the foot of a hill; and that another car came down the hill and struck the wagon in the rear; and there is testimony to show that this car was running at a very rapid rate of speed as it approached a curve on the top of the hill from which it descended, and that the efforts of the motorman and conductor to check the car as it descended on the slippery rails came too late.

*Negligence—Death—Evidence as to cause of death—Proximate cause.*

2. In an action to recover damages for death which occurred

seventy-six days after the accident to the deceased, where a medical witness for the plaintiff testifies that death was due to pernicious anemia caused by the accident, and medical witnesses for the defendant testify without contradiction that the deceased had been suffering from Bright's disease for two years prior to his death, but there is no direct testimony that such disease was aggravated by the accident, it is reversible error for the court to instruct the jury that there was evidence from which they might find that the proximate cause of the death had been aggravation of the Bright's disease, resulting from the accident.

3. A verdict returned upon a theory unsupported by testimony is but a bald guess.

Argued January 6, 1913. Appeal, No. 162, Jan. T., 1912, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1909, No. 1029, on verdict for plaintiff in case of Rachel M. Saunders v. Philadelphia Rapid Transit Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before STAPLES, P. J.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiff for $5,900. Defendant appealed.

*Errors assigned*, among others, were (6) refusal of binding instructions for defendant; (9, 10) portion of charge quoted in the opinion of the Supreme Court.

*Bernard J. O'Connell*, for appellant.—No negligence was shown: Small v. Pittsburgh Rys. Co., 216 Pa. 584; Yingst v. Ry. Co., 167 Pa. 438.

The burden was on the plaintiff of establishing that her husband's death was "occasioned" or caused by the accident, and of establishing the allegation that death was due to anemia arising from the accident; and yet when the evidence is examined there is found a total lack of proof, nor even any fact from which such an inference could be drawn: Moss v. Transit Co., 42 Pa.

Superior Ct. 466; McCarthy v. Transit Co., 42 Pa. Superior Ct. 526; Gallagher v. Snellenburg, 210 Pa. 642; Mahoney v. Transit Co., 214 Pa. 180.

*Samuel J. Taylor,* for appellee.—Defendant was negligent: Snow v. Trac. Co., 45 Pa. Superior Ct. 422; Mackey v. Trac. Co., 227 Pa. 482.

Defendant's death was due to the accident: McCafferty v. Railroad Co., 193 Pa. 339; Temme v. Schmidt, 210 Pa. 507; Davies v. McKnight, 146 Pa. 610; Benson v. Electric Ry. Co., 228 Pa. 290; Blasband v. Philadelphia Rapid Transit Co., 42 Pa. Superior Ct. 325; Brown v. Traction Co., 230 Pa. 498.

OPINION BY MR. JUSTICE BROWN, March 24, 1913:

On December 11, 1908, the husband of the appellee was driving a double team on the east-bound track of the defendant company on Darby Road, in Delaware County. When near the bridge over Cobb's creek he found the track blocked by a car in front of him and stopped his team in the rear of it. While so stopping an east-bound car, descending from a hill immediately to the west, ran into his wagon with such force as to throw him from it. He died February 25, 1909—seventy-six days after the collision—and his widow, alleging that it was the proximate cause of his death, brought this action.

The first question submitted to the jury was the defendant's negligence, and this could not have been withheld from them. Rain had made the tracks slippery, and, in view of the efforts of the motorman and conductor to check the speed of the car as it descended the hill, the jury might have found that the collision was an unavoidable accident, but the court could not have so held as a matter of law. A passenger on the car testified that it was running at a very rapid rate of speed as it approached a curve on the top of the hill from which it descended, and a reasonable conclusion for the

jury was that, as there had not been proper caution in operating it as it approached the curve, the effort made to stop it on the descent was too late. While it is earnestly contended that the jury should not have been permitted to pass upon the question of the defendant's negligence, no complaint is made of the instruction of the court in submitting it, and there remains only the other question of the sufficiency of the testimony to justify a finding that the collision was the proximate cause of the death of appellee's husband.

Dr. Spitz, the physician who was called in immediately after the collision to treat the deceased, and who continued to treat him until his death, testified that it was due to pernicious anemia, which had been caused by the accident. This was sufficient to send the case to the jury, and the nonsuit asked for was properly denied; but, after denying it, the trial judge, in his charge to the jury, instructed them that they would not be warranted in finding that the deceased had died from pernicious anemia produced by the collision, and then proceeded to say to them that there could be a recovery, upon a theory which, in the light of the evidence, is to be regarded as his own, for it was neither pleaded nor proved. He apparently based this theory upon what was developed in the testimony of the physicians called by the defendant. From it the jury might most fairly have found that death had not resulted from pernicious anemia caused by the collision, but was due to chronic Bright's disease, from which the deceased had suffered for two years prior to the collision. Dr. Dorsett, a physician called by the defendant, made the usual chemical and microscopic examinations of the urine of the deceased in February, 1907, and, in the early part of the following month, informed him that he was suffering from Bright's disease; that the average life of one so afflicted was from eighteen months to three years, but that, if he took care of himself, the duration of his life might be indefinite. This same physician saw the de-

ceased on February 22, 1909—three days before his death—and found him in "the terminal stages of Bright's disease." Dr. Wadsworth, another witness for the defense, was present at the autopsy and stated that the kidneys of the deceased were badly diseased and that his death had been due to grave anemia, caused by the kidney condition which had preceded it. Dr. Boger, also a witness for the defendant, who was present at the postmortem examination gave it as his opinion that death had been caused "by chronic Bright's disease associated with pernicious anemia." If anything was clearly proven on the trial, it was that the deceased had been a sufferer from chronic Bright's disease for at least two years before his death. No witness testified that this trouble had been aggravated by the collision and that its aggravation had caused death; but the jury were permitted to find, and did find, that the proximate cause of the death had been the aggravation of the kidney trouble resulting from the collision. They so found under the following instructions, which were given to them after they had been told there could be no recovery on the testimony of Dr. Spitz as to the cause of the death: "If you find from all the evidence in the case that William Saunders did have Bright's disease in February, 1907, then we say to you that you may and should consider whether or not, under all the evidence and from the weight of the evidence, the plaintiff has clearly shown that this disease was so aggravated by the injury claimed to have been suffered by him, as to cause his death on the 25th day of February, 1909.......If from all the evidence, as you have heard it here upon the stand, you are of the opinion that the decedent died of Bright's disease, then you should consider whether or not it was caused by this injury, in other words, whether it was so aggravated by the injury as to cause the decedent's death, and, as we have before stated to you, that must clearly appear from the weight of the evidence in the case. If you find he did not die from

Bright's disease, then we say to you, in the opinion of the court, your verdict should be in favor of the defendant company, because there does not appear to us to be such evidence in the case as would warrant the finding that he died from any other disease that was caused by trauma, or by external force or injury." At the close of the charge the jury were still further instructed: "In connection with the other testimony, we say to you, gentlemen of the jury, our attention having been called to it by defendant's counsel, that there was no testimony in this case of any actual injury to the kidney which caused this aggravated condition. In other words, the only way in which you could arrive at the conclusion that this injury caused this aggravated condition of the kidneys, would be by all the circumstances of the case. It would have to be by circumstantial testimony, because there is no direct testimony that the kidneys were actually injured. There was no opinion expressed by any one of the medical witnesses that the kidneys were injured in this way." True, two physicians did state that Bright's disease might be aggravated by traumatism or shock, but of their testimony the court below properly said, in its opinion overruling the motion for a new trial: "Standing alone these opinions would form no basis for a conclusion that the death of Saunders was caused by the injuries sustained; but when applied to the facts of this case, they lend considerable force to the theory that his death was caused by Bright's disease, hastened by the injuries sustained in the accident." Whose theory was this? We have been unable to find anything in the testimony to support it, and a verdict returned upon a theory unsupported by testimony is but a bald guess: Marsh v. Lehigh Valley Railroad Company, 206 Pa. 558. Such clearly was this verdict after the jury had been instructed that there could be no recovery upon the testimony of Dr. Spitz, the only witness who did express an opinion as to the proximate cause of the death. He may have been mis-

taken, and the jury might fairly have so found under all the evidence, but, without his testimony, the plaintiff had no case. With it, if believed by the jury, she had.

The ninth and tenth assignments of error are sustained and the judgment is reversed with a venire facias de novo.