## Keck v. Philadelphia Rapid Transit Company, Appellant, et al.

Argued January 24, 1934. ·Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Marshall A. Coyne,* with him *Bernard J. O'Connell,* for appellant.

*Joseph W. Henderson,* of *Rawle & Henderson,* with him *George M. Brodhead, Jr.,* and *Thomas F. Mount,* for McDonald (under Rule 61).

*Howard M. Long* and *George S. Wolbert,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 19, 1934:

This is an appeal from the refusal of the court below to enter judgment n. o. v. for the defendant in an action of trespass. On December 6, 1931, Esther Keck, the plaintiff, was a passenger on the left-hand side, rear seat, of an automobile owned and operated by one of the defendants, Charles McDonald. He was driving the automobile eastwardly on Stenton Avenue, a street sixty feet wide, toward the intersection of York Road, a street forty-four feet wide. McDonald desired to make a left-hand turn on York Road. There being considerable traffic on this road, he (so he testified) stopped his automobile south of the center line of Stenton Avenue, with the front wheels of the automobile just over the western rail of the southbound track of the Philadelphia Rapid Transit Company. It was testified on behalf of plaintiff that at that time a trolley car was on Ogontz Avenue, at a point about 200 feet north of Stenton Avenue, and was coming toward the latter. It was also testified that McDonald was waiting until the automobiles proceeding on Stenton Avenue had passed, when he, suddenly looking up, saw defendant's trolley car about forty feet away from him, proceeding at an estimated speed of thirty miles an hour, with the motorman's head turned to the left, apparently attentive to the traffic coming from Broad Street. McDonald, according to testimony offered, attempted to move the car out of the path of the trolley car, but after moving it a few feet, it was struck on its left-hand side by the trolley car's right-hand front corner, derailing the trolley car and hurling the automobile to the southwest corner of the intersection. The trolley car continued in a southerly direction on the

eastern side of York Road, even though the front truck was off the tracks. It went about forty or fifty feet before it stopped. It is the contention of the transit company that, when the trolley car was near the south curbline of Stenton Avenue, the automobile ran into its side derailing it.

One apparently disinterested witness testified that he saw the street car "appear to pick up its speed again" and "crash a car that......appeared to be partly across the trolley track." He admitted that he did not see the automobile before the collision. In behalf of the defendant, certain apparently disinterested witnesses testified that they were passengers in the street car and saw the automobile crash into the trolley car just behind the latter's right-hand front corner, and that the automobile made an attempt to turn down York Road in the same direction as the trolley car.

The plaintiff, who was seriously injured in the accident, obtained a verdict of $15,000 against both defendants. The defendant company, obtained a rule for judgment n. o. v. and for a new trial. The court discharged both rules but ordered a remittitur of the amount of the verdict in excess of $7,500.

In spite of the conflicting testimony offered in this case it is the contention of the company, that the incontrovertible physical facts demonstrated the verity of defendant's evidence and that, therefore, it was entitled to judgment n. o. v. The incontrovertible physical facts, which were invoked by the company, were: (a) that the trolley car was derailed, crossed the dummy and the northbound trolley tracks, and rested so close to the east curb that an automobile could not pass the front end; (b) that the automobile after the accident was in the southbound rail and headed south; (c) the photographs of the trolley car showed the force of the impact was on the right front corner of the trolley car, crushing in the side and the doors, showing no damage whatever to the front of the trolley car itself, and showing even the glass

headlight to be intact. The Philadelphia Transit Co., asks: (a) How would it be possible, with the front wheels of the automobile over the trolley track, for the trolley car to have been derailed and to have crossed almost the entire width of the street? (b) How would it be possible for the automobile after the accident to be headed south occupying the southbound track? (c) How would it be possible for the front end of the trolley car to show no damage with not even the headlight broken? (d) How would it be possible for the trolley car to have its side and doors crushed in if the automobile had been upon the track in front of it? Doubtless these argumentative queries were all addressed by counsel to the jury and the jury answered them, at least to its own satisfaction. They were then in substance addressed to the court in support of the motion for judgment n. o. v. The court found it possible to answer these inquiries other than by entering the judgment n. o. v. asked for.

As to the first query, anyone with even a superficial acquaintance with the results of accidents knows that the results sometimes seem to be at variance with the individual's conception of the working of the laws of physics. The trouble is not with the "laws" but with the individual's "conception." These laws always work with exactitude, but the individual's conception may be based either on insufficient data or on inadequate knowledge of the play of physical forces. For example, one would not ordinarily expect that an automobile standing on a railroad track would derail a heavy locomotive, but the *fact* is that automobiles and even much smaller objects, such as cows, on tracks *often have* derailed heavy locomotives. The locomotive's derailment does not *incontrovertibly* prove that the automobile or cow ran into it, instead of its running into the automobile or cow.

As to query (b), when the front half of the left side of an automobile is struck by a rapidly-moving southbound trolley car, that automobile is quite likely to find itself headed south.

As to query (c), the right front arching corner of the trolley car does in the photograph in evidence show very substantial damage to it. This is what one would naturally expect from its collision with an eastbound automobile which, when it is about to be struck by a southbound street car, "swings to the right," i. e., to the south, as its driver testified he did swing it when he saw that a crash was imminent.

As to query (d), the photographs of the trolley car showing the latter's right front corner and the right half of the folding front door crushed in, does not stamp as absolutely unveracious plaintiff's version of this accident. The photographs in evidence show that the most violent contact was between the right side of the very front portion of the trolley car and the left side of the front half of the automobile. This is what one would naturally expect from such a collision as plaintiff's witnesses described, to wit: When a southbound trolley car strikes an automobile which had swung to the right, i. e., to the south, just before the crash.

There is certainly nothing in the pictures of the after-crash conditions of the trolley car and automobile respectively which can be termed "incontrovertible physical facts," stamping plaintiff's story of the accident so totally incredible as to justify the court below to so declare as a matter of law. The rule as to incontrovertible physical facts discrediting the testimony of one side in an action of trespass is applicable only in clear cases. In Ross v. Riffle, 310 Pa. 176, 164 A. 913, this court said in an opinion by Mr. Justice DREW: "...... Unless the evidence stands definitely opposed to incontrovertible physical facts, the case must be submitted to the jury, no matter how strong the countervailing proof may be: Bailey v. Lavine, 302 Pa. 273 [153 A. 422]."

Complaint is also made of the following excerpt from the charge to the jury (fifth assignment of error) : "Now, in considering the testimony and in considering the arguments of counsel, it is evident that this accident may

have happened in any one of several different ways. When I say several different ways, I mean that on the one hand we have the extreme case represented by the testimony of Mr. McDonald, and on the other hand we have the extreme case represented by the testimony of some of the witnesses for the transit company; and it may be that it happened in any number of other ways in between the two. That is for you to determine." We find nothing erroneous in this excerpt; the jury having heard the conflicting testimony respectively presented in this case was under no obligation to accept as absolute verity the testimony of either side. It had the right to find from the evidence that the true version of the accident was not *exactly* as the witnesses of either side testified. The purpose of testimony is to present statements to a jury from which the jury may logically infer just how the matter giving rise to the controversy took place. This excerpt did not amount to any suggestion by the trial judge that the jury should "guess" how the accident happened; it was a direction that they should use their own reasoning processes to determine from the evidence just how the accident did happen.

There is no principle laid down in Saunders v. P. R. T. Co., 240 Pa. 66, 87 A. 420, cited by appellant, with which the excerpt complained of is at variance. In that case there was no direct testimony that the Bright's disease from which deceased had been suffering two years prior to his death had been aggravated by the accident which formed the basis of the suit in that case. This being a fact, this court held it was reversible error for the trial court to instruct the jury that there was evidence from which they might find that the proximate cause of the death had been aggravation of the Bright's disease, resulting from the accident. In that case we said, in an opinion by Mr. Justice BROWN: "We have been unable to find anything in the testimony to support it [i. e., the theory that death was caused by the Bright's disease having been aggravated by the injury], and a verdict re-

turned upon a theory unsupported by testimony is but a bald guess."

In the case before us the verdict returned was based upon the theory that both defendants showed want of due care. There was ample evidence to sustain this finding. The negligence of McDonald was not imputable to plaintiff. The rules for judgment n. o. v. and for a new trial were properly discharged.

The judgment is affirmed.