## VAN HOUSE v. ACORN STEEL CO., Inc.

### No. 8606.

Circuit Court of Appeals, Third Circuit.
Argued June 22, 1944.
Decided Aug. 8, 1944.

J. B. Leopold, of Philadelphia, Pa. (Max E. Cohen, of Philadelphia, Pa. on the brief), for appellant.

William F. Quinlan, of Philadelphia, Pa. (John J. McDevitt, Jr., of Philadelphia, Pa., on the brief), for appellee.

Before BRATTON and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

McLAUGHLIN, Circuit Judge.

This concerns a motor vehicle accident which resulted in the death of plaintiff's decedent, Robert Van House. It involved a collision between the decedent's motorcycle and defendant's automobile truck. The accident happened June 29, 1942 at or near the intersection of Highway No. 532 and Killian Trail, Bucks County, Pennsylvania. The suit resulted in a jury verdict in favor of the plaintiff in the sum of $16,000 and this appeal is from the judgment entered on that verdict.

 The appellant first stresses that there are incontrovertible physical facts in the case which call for judgment in favor of the defendant. In such matter as this, with the case arising in Pennsylvania, the rights of the parties are governed by the law of that State. Cranston v. Baltimore & Ohio Railroad Co., 3 Cir., 109 F.2d 630. In a proper case the Pennsylvania incontrovertible-physical facts rule would be applied by this court. See Tarbet v. Thorp, 3 Cir., 117 F.2d 495. The proof of such situation must be undisputable with the physical facts demonstrating that evidence to the contrary is untrue, Lessig v. Reading Transit & Light Co., 270 Pa. 299, 113 A. 381; Keck v. Philadelphia Rapid Transit Co., 314 Pa. 389, 171 A. 478; Ross v. Riffle, 310 Pa. 176, 164 A. 913; Bailey v. C. Lewis Lavine, Inc., 302 Pa. 273, 153 A. 422.

The testimony shows that the decedent was proceeding on his motorcycle, at approximately 10 miles an hour, north on Killian Trail approaching Route No. 532, which is an east to west highway. The junction of Killian Trail with Route No. 532 formed a "T" intersection. The defendant's truck was moving west on Route No. 532. One witness puts its speed at approximately 50 miles an hour; another, said it was "flying"; a third, estimates it at about 40 miles an hour. The defendant's truck driver stated that he was going at from 30 to 35 miles an hour. Killian Trail as it came to Route No. 532 was slightly upgrade. Both corners of the intersection embraced farm lands planted in wheat, with consequent poor visibility both from the Trail to the highway and vice versa. East of Killian Trail on Route No. 532 there was a "T" road sign indicating such

intersection ahead. Route No. 532 was a macadam road about 18 feet wide. Killian Trail was of dirt with loose stone piled on top of it and about 16 feet wide. Route No. 532 had the customary highway longitudinal white line marking the center of it.

There was testimony that the defendant's truck was straddling that white line as it approached the particular intersection and that it continued in that position to and beyond the point of collision. The speed of the truck was not diminished as it approached the intersection. The truck driver testified that he did not see the "T" sign. That driver did not say that he sounded any warning, and at least one witness testified that he did not hear any warning. The truck driver stated as to Killian Trail that, "I didn't know a road was there." There were two eyewitnesses as to the occurrence; one of them, Frank Molnar, was operating a truck on Route No. 532 west of Killian Trail at the time of the accident and proceeding in an easterly direction towards the scene of the accident; the other was the defendant's truck driver, Grady Hyman. Molnar said that he saw the deceased on his motorcycle as the latter entered the highway. At that time Van House was looking to his left as he made a right turn. There was a collision directly thereafter, between the left front of the truck and the front of the motorcycle. Molnar stated that the deceased and the motorcycle were thrown 5 or 6 feet into the air and forward about 25 feet. He said the truck continued on after the accident for 150 to 200 feet. He said that at the time of the collision, the motorcycle was on its own side of the road and that the truck was on its wrong side. Another witness, who saw the truck just prior to the collision and who, hearing the crash, looked up and then saw it immediately following the accident, puts the truck more to its left than it was to its right and over the white line. Molnar did not notice any skid marks on the road after the accident except those of his own vehicle. A State Trooper who arrived shortly after the occurrence saw skid marks. From his testimony, as to these, it could be inferred that the truck was on its right side of the road and that the marks of the motorcycle ended at the center of the highway. There are photographs of the intersection, among the exhibits, showing various road marks. These are not too helpful and certainly are not dispositive as to the location of the vehicles. Van

206

House died almost instantly with, therefore. his version of what happened, unavailable.

■ A study of the testimony shows that at best there were disputes on the factual questions involved with substantial evidence supporting the plaintiff's version. The inferences favorable to the defendant from the skid mark evidence are not the undisputable type required by the Pennsylvania incontrovertible facts rule. Such inferences are directly contradicted by the only disinterested eyewitness, Molnar, and by Allison, the man who saw the truck just prior to and immediately following the accident. Under all the evidence, the positions of the two colliding vehicles at the time of the accident were peculiarly a question of fact for the jury under the court's charge.

■ Defendant further urges that decedent was contributorily negligent as a matter of law. It bases this on Molnar's testimony that he observed the decedent entering the highway looking to the left, as he proceeded with his machine to make a right turn. We cannot agree that that conclusion follows from the facts. The only evidence in the case as to the motorcycle's speed is that it was traveling approximately 10 miles an hour. There is positive testimony that Van House was always on his own side of the highway as he made his way into it. Van House was entitled to assume that westbound traffic, if any, on Route No. 532 would proceed lawfully. Van House's first contact with Highway No. 532 was with the south side thereof which carried eastbound traffic. While he was apparently still checking the eastbound traffic situation (it was from that direction that Molnar in his truck was approaching) and while, according to testimony in the case, he was still on his own south side of the highway, the collision happened. The defendant's truck, meanwhile, had been coming west on the highway. According to its driver, some distance east of Killian Trail, the truck had gone over to the left of the highway in order to pass a vehicle but had returned to its right side of the road prior to the accident. According to Molnar and Allison, it continued partially on its wrong side of the road to, and beyond, the accident. Hyman, the truck driver, admittedly had not seen the warning "T" road sign; he did not know Killian Trail was ahead of him; apparently did

not sound any warning and was traveling at a speed estimated by one witness to be around 50 miles an hour.

All Molnar says is, that when he first saw Van House, the latter was looking towards him up the road, west, to his left. He does not, of course, pretend to say whether Van House had looked to his right previous to that. The death of Van House precludes knowledge of whether the terrain rendered difficult, effective observation of the highway until he reached the intersection. If that was the situation, it might well have been the reason for him proceeding so slowly out into the highway, with him looking to his left to check that part of the road closest to him and with the collision intervening before he had the opportunity to observe westbound traffic conditions to his right. The fact that the road on which Van House was traveling ended at Highway No. 532 and that he was actually making a turn at the time of the collision, lends some support to the testimony of the slow speed at which he was moving. As the case shaped up, the trial court had no alternative but to submit the question of decedent's contributory negligence to the jury, with appropriate instructions.

■ Appellant also, in this court, questions the trial court's charge on the measure of damages. There were no requests to charge on that point. Nor were there any exceptions by the appellant to what the court had to say on the subject. At the conclusion of the charge the court specifically inquired, "Does counsel wish me to say anything further?" Counsel for the defendant said, "Merely grant me an exception to the court's refusal to charge the second and third points (which had nothing to do with damages)." The court answered, "Yes" and then counsel for defendant said: "Thank you, nothing further. * * *" This question is, therefore, not before us. We have, however, examined the record to see whether it fairly supports the amount of the verdict. It shows that the deceased was a healthy person, 22 years old, with a life expectancy of 41.46 years. He left a widow, the plaintiff. He was a farmer who worked every day. He received $10 a week all year round from one part time job; $25 a week for two and a half months a year from another farm occupation; he had made about $450 profit on his 1942 potato crop; and had a retail route of his own, selling buckwheat,

chickens and eggs. From that evidence we cannot say that the jury's verdict was so excessive as to justify this court in disturbing it.

The judgment of the District Court is affirmed.